UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL J. LOVE,

        Plaintiff,

   v.                                         CAUSE NO. 3:21-CV-115-DRL-MGG

RONALD NEAL *et al.*,

        Defendants.

OPINION AND ORDER

Michael J. Love is a prisoner at Indiana State Prison proceeding without a lawyer. He filed an amended complaint under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 1915A, the court must screen the complaint to determine whether it states a claim for relief. The court bears in mind that "[a] document filed *pro se* is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citation omitted).

The court struck Mr. Love's original complaint because it was confusing and contained unrelated claims against unrelated defendants. The amended complaint has many of these same problems. Still, based on the filings to date, the court finds it unlikely that giving Mr. Love another chance to replead is likely to result in a more focused complaint, so the court proceeds to screening.

The amended complaint is lengthy and in places quite difficult to follow. It contains sprawling allegations regarding Mr. Love's incarceration at ISP. Giving the complaint liberal construction, Mr. Love alleges that he has medical conditions that are not being adequately treated. According to an attachment, Mr. Love has a "very

complicated surgical history—stemming from multiple gunshot wounds he suffered before his incarceration. (ECF 11-1 at 8.) Among other ailments, he has a nephrostomy bag and previously underwent urinary reconstruction surgery.[1] He also claims that two correctional officers allegedly dragged him down a flight of stairs in 2019, causing him neck, back, knee, and shoulder pain. He says his treating physician, Dr. Nancy Marthakis, has failed to treat these ailments adequately and has refused to obtain x-rays of his injuries from this incident with the guards. He claims his injuries continue to cause him pain and difficulty walking and engaging in other daily activities.

He further claims that he suffers chronic urinary tract and bladder infections that have not been adequately addressed by Dr. Marthakis. He is concerned that he might develop sepsis. He says Dr. Marthakis and Nurse Practitioner Diane Thews will only treat him with antibiotics, which do not work, instead of sending him to an outside hospital for assessment and treatment. He says Nurse Practitioner Thews gave him an antibiotic in March 2021 that he told her he could not take; and, as a result, his feet, ankles, and legs swelled up to the point he thought they would "explode." In early April 2021, Dr. Marthakis treated him with another round of antibiotics that "didn't even scratch the surface" of his infections. Based on these events, he sues 13 defendants, including medical staff, Wexford Health Sources of Indiana, ISP Warden Ron Neal, the two correctional officers who allegedly dragged him down the stairs, the Indiana Attorney General,

---

[1] According to the Indiana Court of Appeals: "Before [Mr.] Love's arrest on July 20, 2015, his medical history included multiple gunshot wounds, chronic back and knee pain, gout, anxiety, and a urostomy along with a nephrostomy bag." *Love v. State*, 113 N.E.3d 730, 733 (Ind. Ct. App. 2018).

LaPorte County, and Michigan City, among others. He seeks monetary damages and various forms of injunctive relief.

Inmates are entitled to constitutionally adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, a prisoner must allege (1) that he had an objectively seriously medical need and (2) that the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize the need for medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the second prong, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 ( citation and internal quotation marks omitted).

At the same time, a prisoner is not required to show that he was "literally ignored" to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). "[I]nexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted). Additionally, a "prison physician cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011).

3

"[A] doctor's choice of the easier and less efficacious treatment for an objectively serious medical condition" can amount to deliberate indifference. *Berry*, 604 F.3d at 441.

Giving Mr. Love the inferences to which he is entitled at this stage, he has alleged a plausible Eighth Amendment claim against Dr. Marthakis and Nurse Practitioner Thews for not providing adequate treatment for his chronic infections and knee, shoulder, back, and neck pain.

Mr. Love also seeks injunctive relief related to his ongoing need for medical care for these conditions. ISP Warden Ron Neal has both the authority and the responsibility to ensure that inmates at his facility are provided constitutionally adequate medical treatment as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, Mr. Love will be allowed to proceed on an Eighth Amendment claim against the Warden in his official capacity for injunctive relief related to his ongoing need for medical care.

Mr. Love also sues Wexford Health Sources of Indiana, the private company that employs medical staff at ISP. A private company may be held liable for constitutional violations when it performs a state function. *See Hildreth v. Butler*, 960 F.3d 420, 422 (7th Cir. 2020). There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and Wexford cannot be held liable solely because it employs the medical professionals involved in Mr. Love's care. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020). A private company performing a public function can also be held liable to the same extent as a government actor under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). There is no factual

content in the complaint from which it can be plausibly inferred that Wexford has an official policy of providing inadequate medical care to inmates. Nor is there any indication that it was an official policy or practice that caused his injury. Rather, his complaint describes individual failings by the medical professionals involved in his care.

He also sues two municipal entities, Michigan City and Laporte County, apparently because they encompass the geographic area where ISP is located. ISP is a state-run facility, and there is no indication from the complaint that these municipalities had any involvement in these events. Nor is there any indication that an official policy of either municipal entity is what caused Mr. Love's injury. He will not be permitted to proceed against these defendants.

He also names as defendants the Indiana Attorney General and various state-level correctional officials, but there is no indication from the complaint that they were personally involved in these events or personally responsible for providing Mr. Love's medical care. They cannot be held liable simply because they oversee law enforcement operations within the state or supervise correctional staff. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009); *George v. Spann*, 507 F.3d 605, 609 (7th Cir. 2007). They will be dismissed.

He also lists ISP Health Service Administrator Sherri Fritters and the Grievance Officer Mark Newkirk as defendants without mentioning them in the narrative section of his complaint. There is no plausible basis for the court to infer deliberate indifference by these two defendants. They will be dismissed.

5

In addition to his claims regarding his medical care at ISP, Mr. Love's complaint contains other claims. Specifically, it appears he is trying to assert a claim regarding the medical care he received in 2017 during his pretrial detention at Marion County Jail.[2] He also sues the two correctional officers involved in the stair-dragging incident in 2019 for allegedly using excessive force against him. The court finds that these claims are not sufficiently related to his claims against Dr. Marthakis and Nurse Practitioner Thews related to the care he is receiving at ISP to proceed in the same lawsuit.[3] *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). It would be particularly inappropriate to try to litigate these discrete claims together given that Mr. Love claims to have pressing medical issues that need to be addressed promptly. These claims will be dismissed without prejudice to Mr. Love asserting them in separate lawsuits, should he choose to do so.

As a final matter, Mr. Love separately moves for a preliminary injunction. (ECF 12.) He asks for an order requiring that he be immediately "airlift[ed]" to an outside hospital, and/or an order requiring his immediate release from custody so he can obtain

---

[2] The court notes that in his direct criminal appeal, the Indiana Court of Appeals observed that Mr. Love had used his medical conditions to manipulate and delay the trial proceedings. *See Love*, 113 N.E.3d at 741 ("Although claiming that he wanted to proceed with the trial, Love repeatedly used . . . his medical conditions as reasons to seek continuances. . . . Love also refused medical treatment for serious and life-threatening conditions and then, on account of such conditions, requested release from jail so he could obtain medical treatment of his choosing.").

[3] To the extent Mr. Love is claiming that the events are related because Dr. Marthakis engaged in a conspiracy with the two correctional officers to "murder" him, he has not adequately alleged a conspiracy claim. *See Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009) (observing that "a bare allegation of conspiracy" is not enough to survive dismissal). Indeed, the court finds his allegation that a licensed physician would conspire with two correctional officers to try to murder a prisoner in the vein of "fantastic" or "delusional." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989).

his own medical care. As the court told him in a prior order, release from custody is not a proper remedy even if he proves a constitutional violation in connection with the conditions of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 488 (1973); *Glaus v. Anderson*, 408 F.3d 382, 387 (7th Cir. 2005). To the extent he is trying to attack his alleged "illegal incarceration," his sole remedy is through habeas corpus. *Preiser*, 411 U.S. at 488.

Nevertheless, his filing can be read to assert that he is in need of additional medical care to address his pain and chronic infections while this case is pending. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As to the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

"Mandatory preliminary injunctions – those requiring an affirmative act by the defendant – are ordinarily cautiously viewed and sparingly issued [because] review of a preliminary injunction is even more searching when the injunction is mandatory rather than prohibitory in nature." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted). Therefore, the court will order the Warden to respond to the motion for a preliminary injunction before taking further action.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Dr. Nancy Marthakis and Nurse Practitioner Diane Thews in their personal capacity for monetary damages for failing to provide adequate medical treatment for his chronic infections and knee, shoulder, back, and neck pain from September 2019 to the present in violation of the Eighth Amendment;

(2) GRANTS the plaintiff leave to proceed against Warden Ron Neal in his official capacity on an Eighth Amendment claim to obtain injunctive relief in the form of medical care needed to address his chronic infections and knee, shoulder, back, and neck pain;

(3) DISMISSES the plaintiff's unrelated claims against Sergeant Slaninka and Sergeant Buckman and his unrelated claims pertaining to the medical care he received at the Marion County Jail without prejudice to being raised in a separate lawsuit;

(4) DISMISSES all other claims contained in the amended complaint;

(5) DISMISSES Sherri Fritter, Mark Newkirk, the Indiana Attorney General, Wexford Health Sources, Robert Carter, LaPorte County, Michigan City, and Kristin Dauss as defendants;

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. Nancy Marthakis and Nurse Practitioner Diane Thews at Wexford of Indiana, LLC, and to send them a copy of this order and the amended complaint pursuant to 28 U.S.C. § 1915(d);

(7) DIRECTS the clerk to request a Waiver of Service from Warden Ron Neal by email to the Indiana Department of Correction with a copy of this order and the amended complaint pursuant to 28 U.S.C. § 1915(d);

(8) DIRECTS the clerk to fax or email a copy of the same documents to Warden Ron Neal at Indiana State Prison;

(9) DIRECTS the United States Marshals Service to serve process on Warden Ron Neal pursuant to 28 U.S.C. § 1915(d) by **July 2, 2021**, if he has not filed an appearance by **June 14, 2021**;

(10) ORDERS Warden Ron Neal to file and serve a response to the motion for a preliminary injunction (ECF 12) as soon as possible, but no later than **July 12, 2021**, with supporting medical documentation and declarations from staff as necessary, addressing the status of the plaintiff's medical conditions, what medical evaluations and treatment he has received to date, and what future course of treatment, if any, has been prescribed;

9

(11) ORDERS the Indiana Department of Correction and Wexford of Indiana, LLC, to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(12) ORDERS Warden Ron Neal, Dr. Nancy Marthakis, and Nurse Practitioner Diane Thews to respond, as provided in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

May 13, 2021

*s/ Damon R. Leichty*
Judge, United States District Court